UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER J. GILSON,<br><br>       Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:13-cv-05237-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 25, 2014 |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 28, 2010, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning February 1, 2009. See ECF #13, Administrative Record ("AR") 15. Both applications were denied upon initial administrative review on May 28, 2010, and on reconsideration on September

REPORT AND RECOMMENDATION - 1

9, 2010. See id.  A hearing was held before an administrative law judge ("ALJ") on August 4, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 31-58.

In a decision dated October 19, 2011, the ALJ determined plaintiff to be not disabled. See AR 15-25.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 20, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On April 1, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on June 10, 2013. See ECF #13.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical opinion evidence from Shawn K. Kenderdine, Ph.D., and Daniel M. Neims, Psy.D.; (2) in evaluating the lay witness evidence in the record; (3) in finding plaintiff to be capable of returning to her past relevant work; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the opinion evidence from Dr. Neims and the lay witness evidence in the record, as well as in finding plaintiff to be capable of performing both her past relevant work and other jobs existing in significant numbers in the national economy.  Also for the reasons set forth below, however, while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

I.    The ALJ's Evaluation of the Medical Opinion Evidence from Dr. Neims

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

---

       scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The record contains a January 2010 evaluation report from Dr. Neims, in which he found plaintiff had a number of moderate to marked mental functional limitations. See AR 305.  In a May 2011 evaluation report, Dr. Neims again assessed a number of mental functional limitations, this time ranging from moderate to severe, and opined that she was disabled from substantial gainful activity for the foreseeable next 12 months. See AR 399-400.  The ALJ rejected the 2011 evaluation report because it was "not internally consistent." AR 22.  Specifically, the ALJ stated in regard to that evaluation that while Dr. Neims found "mental health was primary," he "also

REPORT AND RECOMMENDATION - 5

found that chemical dependency needed to be addressed," and that although plaintiff was noted by Dr. Neims to be "under the influence of marijuana at the time of the evaluation," he saw her drug and alcohol use as "non-material". AR 22-23.  In regard to the January 2010 evaluation, the ALJ stated that while Dr. Neims again indicated plaintiff's "mental health was primary," he "also noted that there was no indication of current or recent alcohol or substance use, and no mental health symptoms that were affected by the substance abuse." AR 23.

Plaintiff argues the ALJ erred in interpreting Dr. Neims's findings as being inconsistent. The undersigned agrees.  First, it should be noted that contrary to the ALJ's findings, while Dr. Neims did check a "no" box in response to a question asking whether there was any indication of alcohol or substance abuse, elsewhere in the evaluation form Dr. Neims completed – including on the same page as the above question – are written notes clearly showing Dr. Neims was well aware of plaintiff's ongoing marijuana abuse. See AR 304, 308-09.  Nor does the ALJ offer any explanation as to why it is not possible for an individual to smoke marijuana and yet still have underlying mental health issues be the primary cause of impairment in functioning.  Given that Dr. Neims is a licensed psychologist, it appears the ALJ improperly substituted her lay opinion for that of his expertise here.[2]

II.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

---

[2] See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ may not base decision on "own expertise," and should avoid commenting on meaning of medical findings without supporting medical expert testimony).

REPORT AND RECOMMENDATION - 6

2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains lay witness statements from plaintiff's mother and boyfriend. With respect to plaintiff's mother's statements, the ALJ found:

> The undersigned has reviewed the third party function report from [the] claimant's mother, Judy Gilson (5E), and assigns minimal weight to her observations/opinions because there does not appear to be any recognition of the claimant's alcohol or marijuana use or its impact on her mental impairments. Many of Ms. Gilson's statements are also inconsistent with the medical evidence in this case and appear to be influenced by her relationship with the claimant and not on detached clinical observation.

AR 22. The undersigned agrees with plaintiff that these are not germane reasons for rejecting Ms. Gilson's statements. First, the ALJ does not explain why Ms. Gilson's statements should be given less weight solely because she did not address plaintiff's alcohol or drug use, particularly as the form she completed did not ask her about such use. See AR 191-98. It is also unclear why Ms. Gilson should have recognized the impact plaintiff's substance use may have on her mental impairments, given that Ms. Gilson is not a medical expert. In addition, the ALJ offers nothing specific in terms of the medical evidence she states is inconsistent with Ms. Gilson's statements, and as discussed above it is far from clear that those statements are inconsistent therewith given the ALJ's improper rejection of Dr. Neims's opinions discussed above.

It was improper as well to discount Ms. Gilson's statements because they appeared to be influenced by her relationships, and were not based on detached clinical observation. Again, Ms. Gilson is not a medical source and so her lay witness statements are not required to be based on

REPORT AND RECOMMENDATION - 7

detached clinical observation.  Nor is the mere fact that Ms. Gilson may have a close relationship to plaintiff a sufficient basis for rejecting her statements.  See Valentine v. Commissioner Social Security Administration, 574 F.3d 685, 694 (9th Cir. 2009).[3]

The ALJ also erred in failing to discuss at all the statement from plaintiff's boyfriend.  Defendant does not argue the ALJ did not err in failing to do so, but asserts any such error was harmless in this case.[4]  The undersigned agrees.  As noted by defendant, where a claimant's testimony has been properly rejected lay witness testimony that is similar thereto may be rejected for the same reasons used to reject the claimant's testimony.  See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).[5]  Plaintiff does not argue the ALJ erred in discounting her credibility in this case, but argues the limitations described by her boyfriend in his statement are not wholly

---

[3] In Valentine the Ninth Circuit explained:

> The ALJ also relied in part on two facts quite common to spouses: that [the lay witness], as [the claimant's] wife, was an interested party, and that she never saw him at work.  Such a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.' *Dodrill*, 12 F.3d at 918-19.  Although spouses usually do not observe each other at work, they do usually observe each other at home.  Thus, insofar as the ALJ relied on characteristics common to all spouses, she ran afoul of our precedents.
> This does not mean an ALJ must accept the testimony of a spouse who knows little about a claimant's functional capacity.  But the ALJ must explain such ignorance in the individual case.  Similarly, evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an "interested party" in the abstract, might suffice to reject that spouse's testimony. . . . [W]e remind ALJs to tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject.

Id.  In this case, the ALJ similarly failed to point to any specific evidence in the record that Ms. Gilson exaggerated her statements due to her relationship with plaintiff.

[4] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[5] "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." 674 F.3d at 1117; see also id. at 1122 (finding specifically that "[a]lthough the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to the lay testimony.").

REPORT AND RECOMMENDATION - 8

similar to those she herself has reported. Almost all of the examples plaintiff provides, however, are mentioned or largely echoed by plaintiff in her own reports as well. Compare AR 255 with AR 223-29, 235, 246.[6] Thus, while as discussed above the ALJ's failure to provide germane reasons for discounting plaintiff's mother's statements constitutes reversible error, the failure to specifically address her boyfriend's statement does not.

III.    The ALJ's Step Four Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-

---

[6] The only exception appears to be her boyfriend's statement that she forgets to take her medication (see AR 255), but this observation alone does not necessarily indicate the presence of an actual work-related functional limitation.

REPORT AND RECOMMENDATION - 9

related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: no use of ladders, ropes, or scaffolds. The claimant should avoid hazards due to the side effects of the claimant's medications. She is able to perform simple tasks; she is limited to seldom and superficial interaction with the general public, and only occasional interaction with co-workers.**

AR 20 (emphasis in original). Plaintiff argues the ALJ erred by failing to include in the above RFC assessment all of her functional limitations. Because as discussed above the ALJ failed to provide valid reasons for rejecting the opinions of Dr. Neims and the lay witness statement from plaintiff's mother, the undersigned agrees it cannot be said at this time that the ALJ's RFC assessment accurately describes all of plaintiff's mental limitations at this time. For the same reasons, the undersigned also agrees the ALJ's determination at step four that she is capable of performing her past relevant work as a cleaner/housekeeper, which is based on that assessment, is unsupported by the substantial evidence in the record.[7] See AR 23.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at

---

[7] Plaintiff also asserts the ALJ erred at step four by failing to make proper findings in regard to whether her past relevant work constituted substantial gainful activity, to make the requisite findings concerning the specific mental demands of her past relevant work as required by SSR 82-62, 1982 WL 31386, *4, and to properly compare those demands with the RFC he assessed. As defendant does not contest this assertion, the undersigned finds these to be valid bases for challenging the ALJ's step four determination as well.

REPORT AND RECOMMENDATION - 10

1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 51-52. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 54-55. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 23-24.

Plaintiff argues the ALJ's step five determination cannot be upheld because it is based on an incomplete hypothetical question. The undersigned agrees, given that as discussed above the ALJ erred in evaluating Dr. Neims's opinions as well as the lay witness evidence from plaintiff's mother, and therefore in assessing plaintiff's RFC upon which the hypothetical question – and thus the ALJ's step five determination – was based. On the other hand, the undersigned declines to find the ALJ erred in failing to include in the hypothetical questions the additional functional limitations posed to the vocational expert by plaintiff's attorney (see AR 52-54), as plaintiff has

REPORT AND RECOMMENDATION - 11

failed to show the evidence in the record supports inclusion thereof at this time.

V.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence from Dr. Neims and the lay witness evidence from plaintiff's mother, and therefore in regard to plaintiff's residual functional capacity and ability to perform both her past relevant work and other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

Plaintiff argues that given the ALJ's failure to properly evaluate Dr. Neims's opinions, those opinions should be credited as true. It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion

REPORT AND RECOMMENDATION - 12

generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be met. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). Here, there is other evidence in the record – including other medical opinion evidence – in regard to which plaintiff has failed to establish reversible error on the ALJ's part, and which either contradicts or does not fully support the mental functional limitations Dr. Neims assessed. Accordingly, the undersigned declines to apply the credit as true rule in this case.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 25, 2014**, as noted in the caption.

DATED this 9th day of April, 2014.

*[signature]*

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13